# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br><br>*Plaintiff*,<br><br>v.<br><br>MARIA E. PETERS,<br><br>*Defendant.* | CASE NO. 3:18-cv-00119<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This decision considers whether, on a motion for judgment on the pleadings, Wells Fargo has established title to the property following its purchase at a foreclosure sale, even if Wells Fargo did not make a reasonable effort to arrange a pre-foreclosure face-to-face meeting with the borrower, as a federal regulation requires. The Court holds that Wells Fargo is entitled to judgment on the pleadings.

## Background

Plaintiff Wells Fargo Bank, N.A. filed the complaint for ejectment under Virginia law against Defendant Maria Peters. Dkt. 1.

On August 11, 2014, Peters borrowed an original principal amount of $104,293.00 and executed a promissory note memorializing the debt and requiring her to make monthly payments of principal and interest. Dkt. 1 ¶ 20; Dkt. 1-1 (the Note). That day, Peters also executed a deed of trust conveying real property and improvements at 3267 South Blue Ridge Turnpike in Rochelle, Virginia (the Property), to a trustee to secure repayment of the debt described in the Note. Dkt. 1 ¶ 22; Dkt. 1-2 (the Deed of Trust). *See also* Dkt. 13 ¶¶ 20, 22. The Deed of Trust was recorded on August 12, 2014. Dkt. 1-2 at 9.

1

In April 2017, Peters defaulted on her loan by failing to make her monthly payments. Dkt. 1 ¶ 23; Dkt. 13 ¶ 23. On May 9, 2017, Wells Fargo mailed Peters a letter explaining options available to avoid foreclosure and encouraged her to contact Wells Fargo. Dkt. 1 ¶ 24; Dkt. 1-3; Dkt. 13 ¶ 24 (objecting for relevance but otherwise admitting). On May 17, 2017, Wells Fargo sent Peters a letter by U.S. Postal Service certified mail, which stated in part:

> We'd like to meet with you to review your financial situation and discuss mortgage payment assistance options that may help you bring your account current. *We would like to arrange a face-to-face meeting with you and a representative of Wells Fargo*.

Dkt. 1-4 (emphasis added); Dkt. 13 ¶ 26 (admitting allegation but arguing it did not comply with relevant regulation). The Postal Service left multiple notices of the certified mail before deeming the letter "unclaimed" on July 2, 2017. Dkt. 1 ¶ 27; Dkt. 1-5; Dkt. 13 ¶ 27.

Wells Fargo alleges that on June 2, 2017, its representative visited the Property to attempt to arrange a face-to-face meeting with Peters, but no contact was made with her on that date. Dkt. 1 ¶¶ 28–30. Wells Fargo also alleges that it left correspondence, described as an "FHA Flyer." *Id.* ¶¶ 30–32. Peters denies that there was any such visit, and she denies that the FHA Flyer was left on that date. Dkt. 13 ¶¶ 28–30.

There is no dispute that Peters sent Wells Fargo a loss mitigation request package on January 5, 2018. Dkt. 1 ¶ 33; Dkt. 13 ¶ 33. Wells Fargo asserts that it sent correspondence to Peters on January 18, 2018, notifying her that the loss mitigation request package she submitted was incomplete, and follow-up correspondence on February 26, 2018, notifying her that, since Wells Fargo never received the required documentation, no loss mitigation options were available to her. Dkt. 1 ¶¶ 34, 36. Peters does not admit or deny those allegations but asks for "strict proof" of such correspondence. Dkt. 13 ¶¶ 34, 26.

On April 11, 2018, the Property was sold at a foreclosure sale auction by the Deed of Trust trustee Samuel I. White, P.C. Dkt. 1 ¶ 38; Dkt. 13 ¶ 38.[1] Wells Fargo was the high bidder with a purchase price of $87,221.00. Dkt. 1 ¶ 39; Dkt. 13 ¶ 39; Dkt. 1-7 at 2. On April 25, 2018, a Deed of Foreclosure was executed reflecting the sale of the Property at the foreclosure auction to Wells Fargo, which was subsequently recorded in the Madison County land records (the Trustee's Deed). Dkt. 1 ¶ 40; Dkt. 13 ¶ 40; Dkt. 1-7.

Thereafter, Wells Fargo filed suit against Peters, raising a claim of ejectment under Virginia law, Va. Code § 8.01-131, *et seq*. Dkt. 1.[2] Wells Fargo invokes the Court's subject matter jurisdiction through diversity of citizenship of the parties. Dkt. 1 ¶¶ 10–12. After Peters filed her answer to the complaint, Dkt. 13, Wells Fargo moved for judgment on the pleadings, Dkt. 21. Wells Fargo's motion is fully briefed, and the matter is ripe for disposition.

## Applicable Law

Rule 12(c) of the Federal Rules of Civil Procedure provides for a motion for judgment on the pleadings after the pleadings are closed. "A motion for judgment on the pleadings is properly granted if it appears certain that the [nonmoving party] cannot prove any set of facts in support of its claim entitling it to relief." *Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP*, 801 F. App'x 915, 916 (4th Cir. 2020). The court must accept as true all material facts alleged in the non-moving party's pleading and view those facts in the light most favorable to the non-moving party. *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014).

---

[1] For the allegations about the foreclosure auction, sale of the Property and subsequent recording of the Trustee's Deed, Peters does not dispute their occurrence but rather the legal consequences and validity thereof. *See* Dkt. ¶¶ 38–40.

[2] Wells Fargo had initially brought an unlawful detainer action against Peters in the General District Court of Madison County, which Wells Fargo agreed to dismiss without prejudice. Dkt. 1 ¶¶ 41–42, 52; Dkt. 13 ¶¶ 41–42, 52.

Wells Fargo brought this action for ejectment under Virginia law. Ejectment was originally a common-law action; now it is defined by statute. *Sheffield v. Dep't of Highways & Transp.*, 397 S.E.2d 802, 803 (Va. 1990); Va. Code §§ 8.01-131, *et seq.* Ejectment is "an action at law to determine title and right of possession of real property." *Brown v. Haley*, 355 S.E.2d 563, 567 (Va. 1987). The plaintiff in an ejectment action "has the burden of proving that he has good title and the right to possession, and he must recover upon the strength of his own title rather than upon the weakness of the defendant's title." *Providence Props., Inc. v. United Virginia Bank/Seaboard Nat'l, Trustee*, 251 S.E.2d 474, 479 (Va. 1979). Accordingly, "the proof necessary to support the action consists of the documents which vest title in the owner and any other evidence related to the issue of title." *Brown*, 355 S.E. 2d at 567.

"In most foreclosure cases, a trustee's deed will satisfy the foreclosure purchaser's burden to establish that it acquired a right of possession after the homeowner's original, lawful entry, and the homeowner will have no good-faith basis to contest it." *Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E.2d 116, 121 (Va. 2016) (considering unlawful detainer claim). However, in "limited circumstances," the homeowner could allege facts that place the validity of the trustee's deed in doubt. *Id.*

Parties' Positions

Wells Fargo argues that it is entitled to judgment because the pleadings demonstrate that there is no material fact in dispute and the only issues remaining are questions of law. Dkt. 22 at 2. Wells Fargo asserts that Peters' defenses do not defeat its right to the Property as a matter of law; and, in any event, Wells Fargo substantially complied with its obligations under the Deed of Trust. *Id.* at 4–5.

First, Wells Fargo characterizes as "meritless" Peters' arguments that the foreclosure sale in this case is void *ab initio*. *Id.* at 5, 7–11. Second, Wells Fargo contends that Peters' argument that the foreclosure sale is voidable does not preclude judgment in Wells Fargo's favor because Peters has not established that the foreclosure sale should be set aside. *Id.* at 5, 11–16. And third, Wells Fargo argues that it has substantially complied with its contractual obligations based on the undisputed facts in the pleadings, including its obligations under 24 C.F.R. § 203.604, which requires a lender to arrange a face-to-face meeting with the mortgagor or make "a reasonable effort" to do so before foreclosure. *Id.* at 5–6, 16–23.

Peters counters that she "is entitled to challenge the validity of the foreclosure defending against eviction." Dkt. 27 at 3. She argues that she has raised a "*bona fide* challenge to the validity of Wells Fargo's claim of ownership" and claim to title. *Id.* at 4–5. On the merits, Peters argues that "Wells Fargo did not substantially comply with the terms of the Deed of Trust." *Id.* at 7. She contends that the relevant regulations, including 24 C.F.R. § 203.604, required Wells Fargo "either to conduct a face-to-face meeting with Peters or to make a reasonable effort to offer her a face-to-face meeting," and that such "reasonable effort" required Wells Fargo to mail a certified letter and to make a trip to try to see Peters at her residence. *Id.* at 8. Peters asserts that Wells Fargo's letter to her failed to satisfy the regulation, and she disputes that anyone from Wells Fargo come to her home to arrange a face-to-face meeting. *Id.*

The parties do not dispute that (1) the Property was sold at a foreclosure auction by the Deed of Trust trustee, Samuel I. White, P.C., on April 11, 2018, Dkt. 1 ¶ 36; Dkt. 13 ¶ 38; (2) Wells Fargo purchased the Property at the foreclosure auction for $87,221.00, Dkt. 1 ¶ 37; Dkt. 13 ¶ 37; and (3) that on April 25, 2018, a trustee's deed was executed and acknowledged conveying

the Property to Wells Fargo, which was subsequently recorded in the Madison County land records on May 2, 2018 (the Trustee's Deed), Dkt. 1 ¶ 38; Dkt. 13 ¶ 38; Dkt. 1-7.

Rather, Peters contests the *validity* of the foreclosure auction sale and subsequent Trustee's Deed—not whether these actions occurred as stated in the pleadings. *See* Dkt. 13 ¶¶ 38–40; *see also* Dkt. 22 at 2–4 (reciting undisputed facts); Dkt. 27 at 1–3 (conceding that Wells Fargo's brief "correctly sets forth certain facts in this case," except challenging Wells Fargo's incorporation of its February 26, 2018 letter). Peters argues that other facts should also be considered, particularly relating to 24 C.F.R. § 203.604 and its provisions requiring a lender to arrange a face-to-face meeting with the mortgagor prior to foreclosure. Dkt. 27 at 2–3.

<u>Reasoning</u>

The Trustee's Deed executed on April 25, 2018 and recorded in Madison County's land records on May 2, 2018, reflects that Wells Fargo was the high bidder on the Property at a foreclosure auction sale on April 11, 2018. Dkt. 1-7; Dkt. 1 ¶¶ 38–40; Dkt. 13 ¶¶ 38–40. The Trustee's Deed further establishes a *prima facie* showing that Wells Fargo has good title to the Property. *Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E.2d 116, 121 (Va. 2016) ("In most foreclosure cases, a trustee's deed will satisfy the foreclosure purchaser's burden to establish that it acquired a right of possession after the homeowner's original, lawful entry, and that the homeowner will have no good-faith basis to contest it."); *Cromer v. De Jarnette*, 51 S.E.2d 201, 203 (Va. 1949) (holding that, where a trustee's deed "contains the essential recitals," such recitals "shall be *prima facie* evidence that such sale was regularly made"). Peters does not dispute this, nor does she argue that the Trustee's Deed on its face lacks the requisite recitals or is facially insufficient. Dkt. 27 at 5 (conceding that "[a] trustee's deed … is entitled to be presumptively correct," and "the burden is on Peters to overcome the presumption at trial …").

6

Rather, Peters' contention is that Wells Fargo failed to satisfy the face-to-face meeting provision in 24 C.F.R. § 203.604 prior to foreclosure, which was a precondition to foreclosure in the Deed of Trust. Thus, Peters contends that on account of that failure, the foreclosure auction sale and Trustee's Deed are void or void ab initio. Dkt. 13 ¶¶ 38–40, 68–79.

24 C.F.R. § 203.604 provides, in pertinent part, that

> The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced.

*Id.* § 203.604(b).

However, "[a] face-to-face meeting is not required if … [a] *reasonable effort* to arrange a meeting is unsuccessful." § 203.604(c)(5) (emphasis added). The regulation further defines such a "reasonable effort" as follows:

> A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. *Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property*, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

*Id.* § 203.604(d) (emphasis added).

The Supreme Court of Virginia has held that deeds of trust with the same language as the Deed of Trust here incorporate 24 C.F.R. § 203.604's face-to-face meeting requirement as a condition precedent to foreclosure. *Squire v. Va. Housing Dev. Auth.*, 758 S.E.2d 55, 60–61 (Va. 2014); *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 202 (Va. 2012). The Deed of Trust provides, in relevant part, as follows:

7

> Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in case of payment defaults, to require immediate payment in full and foreclose if not paid. *This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.*

Dkt. 1-2 at 5 (¶ 9(d)) (emphasis added); *see also Mathews*, 724 S.E.2d at 201 (same).[3] The Supreme Court of Virginia found that this language in the deed of trust "express[ed] the intent of the parties that the rights of acceleration and foreclosure do not accrue under the Deed of Trust unless permitted by HUD's regulations," and thus "expressly withholds authorization to accelerate or foreclose if the Regulation does not permit [the lender] to do so." *Mathews*, 724 S.E.2d at 201. The court therefore found "the face-to-face meeting requirement is a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into the Deed of Trust." *Id.* at 202.

Wells Fargo offers no argument why this regulation would not be incorporated as a condition precedent to foreclosure in the Deed of Trust in this case.[4] Accordingly, Wells Fargo's compliance with 24 C.F.R. § 203.604 was a condition precedent to foreclosure on the Property pursuant to the Deed of Trust.

The Court will further assume that Peters is correct that Wells Fargo failed to comply with 24 C.F.R. § 203.604. Not on account of the certified letter Wells Fargo sent. That plainly complied with the regulation's requirements that a lender send a certified letter seeking to arrange a face-to-

---

[3] The Deed of Trust also includes limiting language in paragraph 9(a) of the Deed of Trust, which states that "Lender may, *except as limited by regulations issued by the Secretary*, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument …." Dkt. 1-2 at 5 (¶ 9(a)) (emphasis added); *see also Mathews*, 724 S.E.2d at 201 (same).

[4] Indeed, the language is the same because HUD requires this language to be incorporated into deeds of trust which secure its federally-insured loans. *Mathews*, 724 S.E.2d at 201 (citing 24 C.F.R. § 203.17(a)).

face meeting. Dkt. 1 ¶¶ 26, 27; Dkts. 1-4, 1-5; Dkt. 13 ¶¶ 26, 27 (admitting letter sent by certified mail but challenging sufficiency of letter under regulations); *e.g.*, *Aazami v. Wells Fargo Bank, N.A.*, No. 3:17-cv-1564, 2019 WL 281286, at *9 (D. Or. Jan. 22, 2019) (holding materially similar letter complied with § 203.604). But the regulation also requires "at least one trip to see the mortgagor at the mortgaged property," 24 C.F.R. § 203.604(d), and on the pleadings, the Court cannot credit Wells Fargo's assertion that it sent someone to the Property when Peters has denied that fact in her answer. *Compare* Dkt. 1 ¶¶ 28–30, *with* Dkt. 13 ¶¶ 28–30; *Massey*, 759 F.3d at 353.

Nonetheless, even assuming Wells Fargo's violation of 24 C.F.R. § 203.604, Peters' allegations, accepted as true, do not demonstrate that the Trustee's Deed is void (or void ab initio), nor do they establish any defect warranting setting aside the Trustee's Deed and rescinding the foreclosure sale.

The parties have not pointed the Court to a case in which a mortgagor raised the mortgagee's non-compliance with 24 C.F.R. § 203.604 as a defense to an action in ejectment under Virginia law. But that does not mean the Court writes on a clean slate. Indeed, this case can be resolved applying well-settled principles, not least of which is that, under Virginia law, "[g]enerally, a court will not rescind a completed foreclosure sale." *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897, 900 (Va. 2020).

The Supreme Court of Virginia has specifically considered a lender's non-compliance with 24 C.F.R. § 203.604 several times. *Ramos v. Wells Fargo Bank, N.A.*, 770 S.E.2d 491 (Va. 2015); *Squire v. Va. Housing Dev. Auth.*, 758 S.E.2d 55 (Va. 2014). In these cases, the court refused the borrower's request to rescind the foreclosure sale notwithstanding the lender's non-compliance with the regulation. In *Ramos*, the court held that, "[u]pon foreclosure under a Virginia deed of

9

trust, the contract of sale is consummated when the auctioneer cries the property out to the person making the highest and last bid," and since the sale of the property had been consummated, the borrowers were "not entitled to rescission of the foreclosure sale." 770 S.E.2d at 494 (cleaned up). That is the situation here. Peters did not bring suit to stop the foreclosure before it occurred. In fact, she never filed suit. Rather, after the foreclosure sale, Wells Fargo brought this action for ejectment against Peters.

To be sure, there are "several 'potential exceptions' to that principle" that a foreclosure sale will not be set aside, including "fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court." *Young-Allen*, 839 S.E.2d at 900; *Ramos*, 770 S.E.2d at 494 n.*. But Peters has not alleged there was any fraud or collusion with the purchaser. And while Peters alleges that Wells Fargo's high bid of $87,221 was "far less than the actual value of the home," assessed at $147,300, that factual assertion without more falls well short of stating a legally-viable claim that the foreclosure sale price was "of such gross inadequacy that it shocks the conscience of the court." *See Chandler v. Chandler's Admr's*, 5 S.E.2d 523, 524 (Va. 1939) (property appraised at $6,000; bid at sale for $3,050 upheld); *Jones v. Jones*, 457 S.E.2d 365, 370 (Va. 1995) ("The burden of proving that a bid is grossly inadequate is on the party advancing such argument.").

Moreover, to the extent that "a material breach of a deed of trust could, in certain circumstances, constitute sufficient grounds to warrant the remedy of rescission," the Supreme Court of Virginia "has never held that equitable rescission is available in cases where a plaintiff fails to plead that he or she has suffered any harm caused by an alleged breach of a deed of trust." *Young-Allen*, 839 S.E.2d at 900.

Here, as in *Ramos*, a careful reading of Peters' pleading demonstrates she failed to allege any injury on account of the specified breach of the deed of trust. *See* 770 S.E.2d at 491–94. To wit, Peters alleged that Wells Fargo failed to comply with § 203.604 and therefore breached the Deed of Trust. Dkt. 13 ¶¶ 68, 72, 78. She also alleged that as a result of these failures, Wells Fargo and the substitute trustee Samuel I. White, P.C. were not entitled to foreclosure, but still did so. *Id.* ¶¶ 71, 73–74. Wells Fargo's high bid, she alleges, was less than the home's value. *Id.* ¶ 75. As a result, she alleges that the foreclosure was invalid (*id.* ¶ 39), the Trustee's Deed is invalid (*id.* ¶ 40), and Wells Fargo's title is invalid (*id.* ¶ 42). Accordingly, Peters argues the trustee's deed is void or voidable and the foreclosure should be rescinded. *Id.* ¶¶ 51, 79. That's it. Notably absent in Peters' pleading are any allegations of damages that flowed to her as a result of Wells Fargo's asserted breach of the Deed of Trust.

Moreover, the allegations in the pleadings demonstrate a lack of a damages or prejudice in this case stemming from the alleged lack of a face-to-face meeting. The purpose of 24 C.F.R. § 203.604's regulatory scheme is to "facilitate the discussion of loss-mitigation options" between lender and borrower. *Stepp v. U.S. Bank Trust Nat'l Ass'n*, 956 F.3d 266, 269 (4th Cir. 2020).[5] The pleadings establish—and there is no dispute—that Wells Fargo sent Peters the May 17, 2018 letter that clearly stated that Wells Fargo's records "indicate [Peters'] mortgage is in default," and further stated: "We'd like to meet with you to review your financial situation and discuss mortgage

---

[5] Indeed, the regulation does not demand a face-to-face meeting in every circumstance. The text of the regulation provides that no face-to-face meeting is necessary if, among other things, the mortgagor clearly indicates they will not cooperate in the interview or if the mortgagee does not have a "branch office" within 200 miles of the Property. 24 C.F.R. § 203.604(c). Still the mortgagee must send the certified letter. Id. § 203.604(b). In *Stepp*, the Fourth Circuit applied a "functional analysis" of the definition of "branch office" in concluding that a mortgagee office that only managed constructive trusts rather than engaged in mortgage-related business was not a branch office under the terms of the regulation. 956 F.3d at 268–69.

payment options that may help you bring your loan current. *We would like to arrange a face-to-face meeting with you and a representative of Wells Fargo.*" Dkt. 1 ¶ 26 (emphasis added); *see also* Dkt. 1-4 at 3; Dkt. 13 ¶ 26. The letter provided Wells Fargo's contact information. Moreover, the pleadings also establish and both parties agree that Peters subsequently sent Wells Fargo a loss mitigation request package. Dkt. 1 ¶ 33; Dkt. 13 ¶ 33. Peters' pleading also lacks any allegations as to how Peters was prejudiced on account of Wells Fargo's alleged failure to visit the Property. In this case, the Court cannot say the purposes of the regulation went unfulfilled.

The Supreme Court of Virginia recently considered a similar argument in *Young-Allen v. Bank of America, N.A.*, 839 S.E.2d 897 (Va. 2020). In that case, the mortgagor sued Bank of America for breach of contract based on allegations that it "failed to send required notices to her, as required by the Deed of Trust," including those concerning "the right to cure, state the amount that must be paid and where it must be sent, and the date by which that figure is good to reinstate/cure." *Id.* at 901. But the complaint "did not allege that Young-Allen had the ability to cure her default," or "that she could have cured her default and prevented the foreclosure sale if she received the notices at issue." *Id.* The court held that, "[w]ithout such an allegation, the complaint did not establish that the alleged breach caused any harm" and the "drastic remedy of equitable rescission" was appropriately denied. *Id.* So too here: Peters failed to allege any harm or prejudice arising from the alleged breach. She also failed to allege her ability to have prevented the foreclosure had the face-to-face meeting been held or had Wells Fargo visited the Property.

Accepting all allegations in Peters' pleading as true, but lacking the allegations described above, Virginia law is clear that Peters is not entitled to rescission of the Trustee's Deed, nor would she have pleaded a plausible breach of contract action under Virginia law.[6] *See Young-Allen*, 839

---

[6] To be clear, Peters has not alleged any cause of action.

S.E.2d at 900–01; *Ramos*, 770 S.E.2d at 493–94; *Creech v. Everbank*, No. 2:20-cv-151, ___ F. Supp. 3d ___, 2020 WL 3248483, at *5-6 (E.D. Va. June 16, 2020) (Smith, J.) (dismissing breach of contract action when mortgagor did not "allege that the failure to engage in a face-to-face meeting caused her any damages"); *but see Squire*, 758 S.E.2d at 61 (describing allegations of damages and harm to state a breach of contract action but refusing the remedy of rescission). In other words, on these pleadings, if Peters timely and affirmatively asserted her rights, she would not have been entitled to damages or having the foreclosure sale set aside.

The Court sees no reason—and Peters has provided none—why on these pleadings she should be entitled to more substantial relief by raising Wells Fargo's failure to comply with § 203.604 as a defense to ejectment than had she raised the same arguments in an affirmative suit against Wells Fargo.

Peters' argument mainly relies on *Parrish v. Federal National Mortgage Association*, 787 S.E.2d 116 (Va. 2016). In that case, Fannie Mae brought an unlawful detainer action against the borrower in general district court in Virginia which awarded judgment to Fannie Mae. The borrower appealed, and a de novo proceeding was conducted in circuit court. The borrower's defense was that the foreclosure sale to Fannie Mae (lender as well as foreclosure purchaser) had not complied with a federal regulation incorporated into the deed of trust that prohibited foreclosure if a completed loss mitigation package was received a period before the foreclosure sale. Peters cites *Parrish* for the proposition that she "is entitled to challenge the validity of the foreclosure defending against eviction" by raising her argument that Wells Fargo failed to comply with § 203.604. Dkt. 27 at 3. She also argues that *Parrish*'s "implicit holding" was that "a defendant in a post-foreclosure case can defend against the validity of the foreclosure," and if the

13

defendant raises a "bona fide claim that the foreclosure was invalid," it should go forward to trial on the issue of title. *Id.* at 5.

Peters' arguments about *Parrish* miss the mark, and nothing in that decision supports the conclusion that Wells Fargo's title has been thrown into doubt on these pleadings. Indeed, the Court has assumed that Peters is correct that she can raise as a possible defense to an ejectment action her argument that Wells Fargo has failed to comply with § 203.604 as a condition precedent to foreclosure under the Deed of Trust. The Supreme Court of Virginia's opinions in *Ramos* and *Squire* were cases in which the borrowers sued for breach of contract and sought rescission for failure to comply with this regulation, but those decisions did not state that the argument could *only* be made in the context of those claims. But the fact that Peters *can* raise the possible defense in this posture does not mean that her defense has merit. It does not. The Supreme Court of Virginia twice rejected claims to rescission of a trustee's deed based on the same argument of failure to comply with the same regulation. And indeed, under that authority, Peters failed to even state a plausible claim for breach of contract. Peters provides no reason why her claims should prevail as a defense when they would not prevail in affirmative claims to relief.

The Court finds *Ramos* and *Squire* more persuasive and relevant to this case than *Parrish*. In those decisions, the Supreme Court of Virginia addressed the specific regulation at issue here and concluded that under Virginia law the borrower was not entitled to relief from a foreclosure sale on account of the lender's alleged failure to comply with that regulation. The Court also notes that the issues on appeal in *Parrish* were questions of subject matter jurisdiction of Virginia's trial courts—state-law jurisdictional issues far afield from the issues in this case. 787 S.E.2d at 119. To the extent *Parrish* sheds light on the merits of Peters' argument and whether she established a bona fide claim and challenge to Wells Fargo's title, the Court notes that *Young-Allen* itself cited *Parrish*

14

and further held that, even though "a material breach of a deed of trust could, in certain circumstances, constitute sufficient grounds to warrant the remedy of rescission," 839 S.E.2d at 900 (citing *Parrish*), the court "has *never held that rescission is available* where a plaintiff fails to plead that he or she has incurred any damages or suffered any harm caused by an alleged breach of a deed of trust," *id.* (emphasis added). At bottom, Peters' answer lacks any such allegation, and otherwise lacks any allegations that would preclude an award of judgment on the pleadings to Wells Fargo.

The Court will grant Wells Fargo's motion in an accompanying order.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

Entered this  23rd   day of November, 2020.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE